UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOMMY THOMASON,

      Plaintiff,        CIVIL ACTION NO. 07-CV-15041-AA

vs.

                                    DISTRICT JUDGE JOHN CORBETT O'MEARA

CORRECTIONAL MEDICAL     MAGISTRATE JUDGE MONA K. MAJZOUB
SERVS., INC., et al.,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

**I.   RECOMMENDATION:** The Motion for Summary Judgment filed by Defendant McCauley (docket no. 27) should be **GRANTED.**

**II.   REPORT:**

This matter comes before the Court on the Motion for Summary Judgment filed by Defendant McCauley. (Docket no. 27). Plaintiff has responded. (Docket no. 29). All pretrial matters have been referred to the undersigned for action. (Docket no. 8). The Court dispenses with oral argument on this motion. E.D. Mich. LR 7.1(e). This matter is now ready for ruling.

    **A.   Facts and Claims**

This is a prisoner civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff is a Michigan prisoner who alleges that Defendants have been deliberately indifferent to his Hepatitis-C diagnosis by failing to notify him of it, treat him for it, and provide a liver transplant. (Docket no. 1). He also alleges that Defendants violated his rights to equal protection for the same reasons. (*Id.*). The named Defendants are 13 individuals and the Correctional Medical Services, Inc. (CMS).

(*Id.*). Defendant McCauley is the only movant in this motion. She is a registered nurse employed by the Michigan Department of Corrections as the health care unit manager at Saginaw Correctional Facility (SRF). (*Id*. at 5).

Plaintiff claims that he was first incarcerated in April 1996 at the Reception and Guidance Center at Jackson State Prison. (*Id*. at 10). Within days of his arrival he was given normal blood tests and then the tests were repeated. (*Id*. at 11). Plaintiff was allegedly under Dr. Uy's care during this time. Plaintiff claims that these blood tests showed or suggested that he was infected with the Hepatitis-C virus but that no one told him of this until Dr. Kanduru advised him in May 2000 that he had high enzyme levels in his blood which meant that he carried the Hepatitis-C virus. (*Id*. at 12). Plaintiff further alleges that he agreed reluctantly with Dr. Kanduru to postpone treatment for a short period of time. (*Id*.).

Plaintiff was then transferred to the Gus Harrison Facility in October 2000 where in late 2002 or early 2003 he received "Peg Interferon" treatment. (*Id*.). Plaintiff received the full 48-week treatment, but it was considered unsuccessful. (*Id*. at 14-15). He also saw during this time Dr. Hutchinson who is a liver specialist. In December 2006 Plaintiff was transferred to Saginaw Correctional Facility where Defendant McCauley was employed. (*Id*. at 16). Plaintiff alleges that on August 6, 2007 Defendant McCauley told him that, with regard to Hepatitis-C testing of inmates, "its [sic] cheaper not to test or inform them, and extremely costly to test then treat all they discover, when they do treat them, its [sic] normally too late, 'as is the case herein.'" (*Id*. at 7).

On September 12, 2007 Dr. Hutchinson wrote a consultation note on Plaintiff's condition. (Docket no. 29, ex. 4). He states in that report that Plaintiff had received treatment for Hepatitis-C for one year, but the treatment was not successful. (*Id*.). He further states that Plaintiff has an 80%

one year survival and 60% two-year survival. Plaintiff's only option before other treatments become available is a liver transplant. (*Id*.). Dr. Hutchinson further wrote that he explained to Plaintiff that "as a serving prisoner, he would not be eligible for evaluation by either liver transplant center in Michigan, but his sentence would need to be reduced to allow the parole board jurisdiction and the parole board would have to decide to parole him, none of which is a foregone conclusion." (*Id*.). On October 17, 2007 the Region I Medical Officer, Dr. Stieve, requested the Saginaw facility to complete a parole application for medical reasons for Plaintiff for review of the Chief Medical Officer. (Docket no. 29 ex. 1). The form used to initiate a medical parole was completed by Defendant Tyree on October 22, 2007 based on Dr. Hutchinson's report. (*Id*. ex. 3). Plaintiff, however, remains incarcerated.

Plaintiff's allegations against Defendant McCauley are sparse in his 34-page Complaint. He recounts the statement she supposedly made to Plaintiff on August 6, 2007. (Docket no. 1 at 7). Plaintiff also claims in his relief section that Defendant McCauley engaged in an "ongoing conspiracy to deny Plaintiff a known needed Liver Transplant" and otherwise conspired to conceal information from him and misled Plaintiff regarding his disease. (*Id*. at 26). Plaintiff seeks damages as relief, as well as a liver transplant. (Docket no. 1).

Defendant McCauley moves for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies against her. (Docket no. 27). She also contends that Plaintiff has failed to show that she was personally involved in any activity that may have violated his constitutional rights. Finally, Defendant argues that she is entitled to qualified immunity because Plaintiff has failed to show that she was a member of a conspiracy. (*Id*.).

**B.     Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. (*Id.*). A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**C.     Analysis**

**1.     Administrative Exhaustion**

Defendant McCauley states in her affidavit that she took part in a case management discussion on August 6, 2007 with Plaintiff and other medical professionals to "provide the plaintiff reassurance for his treatment plan." (Docket no. 27 ex. A). She states that she did not treat Plaintiff, did not conspire with anyone to deny Plaintiff a needed liver transplant, never instructed anyone nor was directed by any superior to deny a patient care as a cost saving measure, and denies the statement attributed to her by Plaintiff during the August 6, 2007 meeting. (*Id.*). Defendant states that at that meeting it was determined that Plaintiff "was not in liver failure and did not have renal involvement." (*Id.*).

Defendant shows that following the August 6, 2007 date, Plaintiff has filed only three grievances. (Docket no. 27 exs. B, B1, B2). Of these three grievances, only the first one (SRF-2007-09-2502-28e), was completely exhausted before Plaintiff filed the instant Complaint. (*Id*.; *Lovett v. Gundy*, 111 Fed. App'x 810 (6th Cir. 2004) (proper exhaustion requires full exhaustion prior to filing complaint)). Plaintiff, however, did not name Defendant McCauley in the exhausted grievance as he was required to by the grievance regulations. (Docket no. 27 ex. B1 ¶ R). Plaintiff filed that grievance on September 1, 2007 and named Dr.Uy, CMS, Inc., and the MDOC. He accuses them of delaying the notification to him that he was carrying the Hepatitis-C virus. (Docket no. 27 ex. C). Therefore, according to Defendant's showing, Plaintiff failed to exhaust his remedies against her. *See Jones v. Bock*, 549 U.S. 199 (2007); *Woodford v. Ngo*, 548 U.S. 81 (2006).

Plaintiff does not dispute these specific showings by Defendant. Rather, he argues that any failure to exhaust is excusable because his grievances were not processed according to regulations. Specifically, Plaintiff claims that at Step II most of his grievances were not sent to the Medical Director for a response. (Docket no. 29 at 3). Plaintiff also argues that any failure to exhaust is excusable because he did not possess the information necessary to file a grievance until a "few months" after arriving at SRF in December 2006. (*Id*. at 4). It was at this time that Ms. Knoll provided Plaintiff with the medical records he needed to show the results of his first blood tests in 1996. (*Id*.).

Assuming that Plaintiff's Step II grievances were not being properly processed, this would not have prevented Plaintiff from filing a proper Step I grievance against Defendant McCauley. Yet, he failed to do so. Therefore, this allegation does not excuse Plaintiff's failure to exhaust.

Plaintiff's other excuse for failing to exhaust also does not survive a close inspection. He claims he received the information needed to file a grievance a few months after arriving at SRF in December 2006. The only direct contact Plaintiff alleges with Defendant McCauley occurred in August 2007. Plaintiff fails to show that he lacked the necessary information by August 2007 to file a grievance. It is clear that by September 1, 2007 (the time that Plaintiff filed grievance no. SRF-2007-09-2502-28E) that he had been given the information regarding his April 1996 blood tests results. Therefore, Plaintiff's purported lack of information does not excuse his failure to file a timely grievance regarding Defendant McCauley's actions on August 6, 2007.

Accordingly, Plaintiff failed to exhaust his administrative remedies against Defendant McCauley. The claims against her should be dismissed without prejudice. 42 U.S.C. § 1997e(a).

### 2. Deliberate Indifference to Serious Medical Need

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or federal laws and must show that the deprivation was caused by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). A claim of an Eighth Amendment violation by a prison official's deliberate indifference requires proof of both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Plaintiff must show that the prison official possessed a sufficiently culpable state of mind in denying medical care and that the medical need is sufficiently serious. (*Id.*). A disagreement between a physician and the prisoner regarding the course of treatment does not state a claim of deliberate indifference. *Hill v. Haviland*, 68 Fed. App'x 603, 604 (6th Cir. 2003). Defendant's claim of qualified immunity requires this Court to consider whether a constitutional violation has occurred; whether that right was clearly established and one of which a reasonable person would have known; and whether Plaintiff has

alleged facts and supported them by sufficient evidence to show that what the defendant did was objectively unreasonable in light of the clearly established right. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999). Section 1983 liability must be based on more than the right to control employees. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). The supervisory official must have actively participated in or authorized the unconstitutional conduct of the subordinate. (*Id.*).

The only active participation that Plaintiff has shown with respect to Defendant McCauley is her participation in the August 6, 2007 case management discussion.[1] Defendant McCauley states in her affidavit that she did not treat Plaintiff, and he has not shown otherwise. His argument that counseling alone meets the definition of treatment misses the mark. (Docket no. 29 at 2). There is no dispute that during the August 6, 2007 meeting Plaintiff knew that he was carrying the Hepatitis-C virus. The discussion focused on his treatment plan for this disease. Even if Defendant McCauley made the statements attributed to her, they fail to show that Defendant McCauley violated any constitutional right of Plaintiff. Plaintiff has failed to show that Defendant McCauley violated any of his constitutional rights based on her active participation or by authorizing the unconstitutional conduct of a subordinate.

Plaintiff attempts to impose liability on Defendant McCauley based on her alleged conspiracy with other Defendants to deny Plaintiff a referral for a liver transplant. (Docket no. 29 at 2). A civil conspiracy is an agreement between two or more persons to accomplish some unlawful purpose through concerted activity. *Ahlers v. Schebil*, 188 F.3d 365, 374 (6th Cir. 1999). Plaintiff must present specific facts showing an agreement or plot to violate his rights. (*Id.*).

---

[1] Defendant McCauley also signed, as the reviewer, the Step I response to Plaintiff's grievance in October 2007. (Docket no. 29 ex. 14). The denial of a grievance alone fails to state a claim under section 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Plaintiff has failed to show specific facts that would support a finding that Defendant McCauley agreed or plotted to deny his constitutional rights. There is no showing that she plotted to deny him a referral for a liver transplant. The record evidence shows that Dr. Hutchinson, the liver specialist who would certainly be a superior of Defendant McCauley, advised Plaintiff that he could not be placed on a transplant list because of his status as a serving prisoner. (Docket no. 29 ex. 4). Plaintiff has not shown otherwise. The record evidence also shows that paperwork was submitted to the parole board for a possible medical parole for Plaintiff within three months of the August 7, 2006 meeting with Defendant McCauley. (Docket no. 29 ex. 3). According to the evidence of record, Plaintiff's parole is a prerequisite to being placed on the transplant list. Therefore, Plaintiff has failed to show that Defendant McCauley joined a conspiracy to deny Plaintiff a referral for a liver transplant.

The evidence also fails to show that Defendant McCauley played any role in Plaintiff's treatment prior to the August 6, 2007 meeting. Plaintiff's complaints about not being informed about or properly treated for Hepatitis-C for several years following his 1996 blood test results do not implicate Defendant McCauley.

Defendant McCauley should be granted summary judgment on the additional basis that Plaintiff has failed to create a genuine issue of material fact on the issue of whether Defendant McCauley violated any of his constitutional rights, including his equal protection rights.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver

of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: October 02, 2008  s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE